Robert A. Faucher (ISB #4745)
rfaucher@hollandhart.com
A. Dean Bennett (ISB #7735)
adbennett@hollandhart.com
Julie A. Hamilton (ISB #11708)
jahamilton@hollandhart.com
HOLLAND & HART LLP
800 W. Main Street, Suite 1750
Boise, ID 83702-7714
Telephone:  (208) 342-5000
Facsimile:   (208) 343-8869

Jonathan K. Youngwood (*Admitted Pro Hac Vice*)
jyoungwood@stblaw.com
Meredith Karp (*Admitted Pro Hac Vice*)
meredith.karp@stblaw.com
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Telephone:  (212) 455-2000
Facsimile:   (212) 455-2502

*Attorneys for Defendant*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PAYSERVICES BANK,<br><br>    Plaintiff,<br><br>vs.<br><br>FEDERAL RESERVE BANK OF<br>SAN FRANCISCO,<br><br>    Defendant. | Case No. 1:23-cv-00305-REP<br><br>**DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................. 1

BACKGROUND ...................................................................................................... 3
    A.   The Federal Reserve System.................................................................. 3
    B.   Master Accounts .................................................................................... 4
    C.   The Board's August 2022 Guidelines for Evaluating Account and
        Service Requests. ................................................................................... 4
    D.   PayServices' Master Account Request ................................................... 5

LEGAL STANDARD............................................................................................... 6

ARGUMENT .......................................................................................................... 6
    I.    Each of PayServices' Claims Must Be Dismissed Because FRBSF
        Had Discretion to Deny PayServices' Request for a Master Account.................. 6
        A.   Count I (APA Claim) Fails Because Discretionary Action Is Not
            Reviewable............................................................................................ 7
            1.    The FRA Provides FRBSF with Discretion to Deny
                Master Accounts. ......................................................................8
            2.    Section 248a Does Not Entitle PayServices to a Master
                Account. ....................................................................................9
            3.    The Statutory Scheme Entrusts FRBSF with Discretion. ..............10
            4.    The Board Confirms that FRBSF Has Discretion.........................12
        B.   Count II (Mandamus Claim) Fails Because Mandamus Cannot Be Used
            to Compel Discretionary Action. .......................................................... 13
    II.   Each of PayServices' Claims Fails Because FRBSF Is Not the
        Federal Government............................................................................... 15
    III.  Count I (APA Claim) Must Also Be Dismissed Because FRBSF's
        Decision Was Not Arbitrary or Capricious............................................ 18
    IV.  Count III (Due Process) Must Be Dismissed for the Independent
        Reason that PayServices Has Not Alleged that It Was Denied
        Procedural Protections. ......................................................................... 20

CONCLUSION...................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accord N. Mgmt. Servs. v. Navigators Specialty Ins. Co.,*
    608 F. Supp. 3d 996 (D. Idaho 2022) ................................................................5

*Am. Bankers Ass'n v. United States*,
    932 F.3d 1375 (Fed. Cir. 2019) ................................................................3, 4

*Am. Bankers Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*,
    75 F.3d 1401 (9th Cir. 1996) ................................................................17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................6

*Barron v. Reich*,
    13 F.3d 1370 (9th Cir. 1994) ................................................................13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................6

*Biden v. Texas*,
    142 S. Ct. 2528 (2022)...........................................................................8

*Bloomberg L.P. v. Bd. of Governors of the Fed. Res. Sys.*,
    649 F. Supp. 2d 262 (S.D.N.Y. 2009) ................................................11

*Bobka v. Toyota Motor Credit Corp.*,
    968 F.3d 946 (9th Cir. 2020) ................................................................10

*Burch v. Smathers*,
    990 F. Supp. 2d 1063 (D. Idaho 2014) ................................................15

*C.R. v. Eugene Sch. Dist.*,
    835 F.3d 1142 (9th Cir. 2016) ................................................................20

*City of Sausalito v. O'Neill*,
    386 F.3d 1186 (9th Cir. 2004) ................................................................19

*Conn. Bd. of Pardons v. Dumschat*,
    452 U.S. 458 (1981)..............................................................................15

*Custodia v. Federal Reserve Bd. Of Govs.*,
    No. 1:22-cv-00125, Doc. 164 (D. Wy. June 8, 2023)..................................9

*Dong v. Smithsonian Inst.*,
    125 F.3d 877 (D.C. Cir. 1997) ..................................................................................15, 16

*Doyle v. City of Medford*,
    606 F.3d 667 (9th Cir. 2010) ............................................................................................14

*Emergency Fleet Corp. v. W. Union Tel. Co.*,
    275 U.S. 415 (1928)......................................................................................................3, 17

*Farmers & Merchs. Bank v. Fed. Rsrv. Bank of Richmond*,
    262 U.S. 649 (1923).............................................................................................................8

*Fed. Rsrv. Bank of Boston v. Comm'r of Corps. & Tax'n*,
    499 F.2d 60 (1st Cir. 1974)...............................................................................................11

*Fid. Fin. Corp. v. Fed. Home Loan Bank*,
    792 F.2d 1432 (9th Cir. 1986) ..........................................................................................14

*Forest Grove School Dist. v. T.A.*,
    557 U.S. 230 (2009)..............................................................................................................9

*Fourth Corner Credit Union v. Fed. Rsrv. Bank of Kansas City*,
    861 F.3d 1052 (10th Cir. 2017) ..........................................................................................9

*Hall v. Am. Nat'l Red Cross*,
    86 F.3d 919 (9th Cir. 1996) ..............................................................................................17

*Int'l Bhd. of Teamsters v. United States DOT*,
    861 F.3d 944 (9th Cir. 2017) ..........................................................................................7, 8

*Int'l Bhd. of Teamsters, Local 2785 v. Fed. Motor Carrier Safety Admin.*,
    986 F.3d 841 (9th Cir. 2021) ............................................................................................12

*King v. Burwell*,
    576 U.S. 473 (2015)............................................................................................................11

*Lebron v. Nat'l R.R. Passenger Corp.*,
    513 U.S. 374 (1995)............................................................................................................17

*Lewis v. United States*,
    680 F.2d 1239 (9th Cir. 1982) ......................................................................................3, 16

*McKinley v. Bd. of Governors of the Fed. Res. Sys.*,
    647 F.3d 331 (D.C. Cir. 2011)............................................................................................3

*Meritage Homes of Nev., Inc. v. FDIC*,
    753 F.3d 819 (9th Cir. 2014) ..............................................................................................8

*MH v. Jeppesen*,
   No. 1:22-cv-00409-REP, 2023 U.S. Dist. LEXIS 108023 (D. Idaho June 20, 2023) ................14

*New York v. Atl. States Marine Fisheries Comm'n*,
   609 F.3d 524 (2d Cir. 2010) .........................................................................................................15

*O'Keeffe's, Inc. v. U.S. Consumer Prod. Safety Comm'n*,
   92 F.3d 940 (9th Cir. 1996) ..........................................................................................................18

*Ocean, Inc. v. Pritzker*,
   24 F. Supp. 3d 49  (D.D.C. 2014)..................................................................................................12

*Opati v. Republic of Sudan*,
   140 S. Ct. 1601 (2020)......................................................................................................................8

*Or. Nat. Res. Council v. Thomas*,
   92 F.3d 792 (9th Cir. 1996) .............................................................................................................7

*Pinnacle Armor, Inc. v. United States*,
   648 F.3d 708 (9th Cir. 2011) ...................................................................................................14, 20

*Scott v. FRB of Kan. City*,
   406 F.3d 532 (8th Cir. 2005) ....................................................................................................16, 17

*Shoshone Bannock Tribes of the Fort Hall Rsrv. v. United States*,
   575 F. Supp. 3d 1245 (D. Idaho 2021) ..........................................................................................13

*Smith v. Grimm*,
   534 F.2d 1346 (9th Cir. 1976) .......................................................................................................13

*Texas Dep't of Hous. and Cmty. Affairs v. Inclusive Communities Project*,
   135 S. Ct. 2507 (2015)...................................................................................................................8-9

*United States ex rel. Kraus v. Wells Fargo & Co.*,
   943 F.3d 588 (2d Cir. 2019) ..........................................................................................................16

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ...........................................................................................................5

*United States v. Snoring Relief Labs., Inc.*,
   210 F.3d 1081 (9th Cir. 2000) .......................................................................................................18

*Walkwell Int'l Labs., Inc. v. Nordian Admin. Servs., LLC*,
   No. 1:13-cv-0199-EJL, 2014 U.S. Dist. LEXIS 5282 (D. Idaho Jan. 13, 2014) .............15, 16, 18

*Whitman v. Am. Trucking Ass'ns*,
   531 U.S. 457 (2001)........................................................................................................................10

*Witzke v. Idaho State Bar,*
  No. 1:22-cv-00090-REP, 2022 U.S. Dist. LEXIS 217217 (D. Idaho Nov. 29, 2022)...............3, 6

**Statutes and Rules**

12 U.S.C § 341 ...............................................................................................................3, 4, 10

12 U.S.C. § 221 ........................................................................................................................3

12 U.S.C. § 241 ..................................................................................................................3, 10

12 U.S.C. § 248(k) ................................................................................................................16

12 U.S.C. § 248a .............................................................................................................passim

12 U.S.C. § 248c .............................................................................................................11, 12

12 U.S.C. § 252 ....................................................................................................................10

12 U.S.C. § 302 ....................................................................................................................16

12 U.S.C. § 304 ...............................................................................................................16, 17

12 U.S.C. § 342 .............................................................................................................passim

12 U.S.C. § 364 ....................................................................................................................10

28 U.S.C. § 1361 ..................................................................................................................16

5 U.S.C. § 701 ..................................................................................................................7, 15

5 U.S.C. § 706(2)(a) ...............................................................................................................7

Fed. R. Civ. P. 12(b)(6) ..........................................................................................................6

**Regulatory Materials**

87 Fed. Reg. 51,099 ...................................................................................................4, 5, 12, 19

**Other Authorities**

Anti-Money Laundering, FINRA ...............................................................................................6

Monetary Policy, Credit and Liquidity Programs and the Balance Sheet,
  FederalReserve.gov (Nov. 15, 2021) ......................................................................................4

Reserve Maintenance Manual, FederalReserve.gov (Nov. 19, 2018) ...............................................4

Defendant Federal Reserve Bank of Francisco ("FRBSF") respectfully submits this memorandum of law in support of its Motion to Dismiss Plaintiff's Complaint for Declaratory and Injunctive Relief.

## PRELIMINARY STATEMENT

Plaintiff PayServices Bank ("PayServices") is an online bank that operates no physical branches, does not carry FDIC insurance, and is not subject to prudential supervision by any federal banking agency.  Its business model focuses on providing payment processing to foreign merchants, buyers and governments.  This litigation concerns PayServices' request for a "master account"—a depository account that provides institutions with direct access to the Federal Reserve System.

FRBSF has discretion to grant institutions with direct access to the Federal Reserve System through a master account.  After nine months of careful review, FRBSF denied PayServices' request because, consistent with guidelines established by the Board of Governors (the "Board")—the federal agency in charge of overseeing the Federal Reserve System—FRBSF determined that PayServices' business model and inadequate risk management controls opened up FRBSF and the Federal Reserve System, as a whole, to risk of illicit financial activity, including terrorism funding.

Dissatisfied with FRBSF's decision, PayServices now brings this action asking the Court to substitute its judgment for that of FRBSF.  PayServices asserts three claims—under (1) the Administrative Procedure Act ("APA"), (2) the Mandamus Act and (3) the Due Process clause—all of which seek the same relief: a court order requiring FRBSF to grant PayServices a master account. PayServices' fundamental contention is that FRBSF had no discretion to evaluate PayServices' master account request and instead should have rubber-stamped the request.  This reading is inconsistent with principles of statutory construction, and in direct contravention of the Board's guidelines, which were published after two rounds of notice and comment.  FRBSF is not required

to grant PayServices direct access to the Federal Reserve System and ignore the financial, reputational, and other risks posed by doing so.

PayServices' Complaint should be dismissed with prejudice for the following reasons:

*First,* all three claims must be dismissed because FRBSF has discretion to deny master accounts.  Section 342 of the Federal Reserve Act ("FRA")—the only statutory provision that governs FRBSF's administration of master accounts—provides FRBSF with discretion to deny master account requests.  *See* Section I.A.1.  Section 248a—the sole statutory provision on which PayServices relies—is a price discrimination provision which does not entitle PayServices to a master account and, in any event, does not apply to FRBSF.  *See* Section I.A.2.  Moreover, both the statutory scheme of the FRA taken as a whole and the Board's interpretation of the FRA confirm that FRBSF has discretion (and in fact, an obligation) to deny master account requests from institutions that pose undue risk to the Federal Reserve System.  *See* Section I.A.3-4.  Because each of PayServices' claims requires PayServices to establish that FRBSF had a non-discretionary duty to grant its request for a master account, all three claims must be dismissed.

*Second,* all three claims must be dismissed because FRBSF is not a federal agency or branch of the government—an express requirement to state a claim under the APA (Count I), the Mandamus Act (Count II), or the Due Process clause (Count III).

*Third,* PayServices' APA claim (Count I) must also be dismissed because PayServices concedes that FRBSF followed the standards established by the Board and, in any event, does not plead any facts showing that FRBSF's decision was arbitrary or capricious.  *See* Section III.

*Finally*, PayServices' Due Process claim (Count III) must also be dismissed because PayServices received notice and an opportunity to be heard.

# BACKGROUND[1]

### A.      The Federal Reserve System

In 1913, Congress created the Federal Reserve System to serve as the nation's central bank. *See* 12 U.S.C. § 221 *et seq.* (the "Federal Reserve Act" or the "FRA"). Congress passed the FRA "to oversee banking operations and promote [] greater economic stability." *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1378 (Fed. Cir. 2019). The Federal Reserve System is composed of private and public entities. Two parts are relevant here: the Board and the Reserve Banks. The Board is a federal agency whose members are appointed by the President. 12 U.S.C. § 241. Consistent with its role as an agency, the Board exercises general rulemaking authority and acts as the "central supervisory authority of the Federal Reserve System." *McKinley v. Bd. of Governors of the Fed. Res. Sys.*, 647 F.3d 331, 333 (D.C. Cir. 2011).

By contrast, the regional Reserve Banks are federally chartered corporations which serve governmental interests but stand apart from the government. *See Emergency Fleet Corp. v. W. Union Tel. Co.*, 275 U.S. 415, 425-26 (1928) ("Instrumentalities like . . . the federal reserve banks, in which there are private interests, are not departments of the government."). They serve as the System's operating arms, subject to the supervision of the Board. *See* 12 U.S.C § 341 *et seq.*; *see also* Compl. ¶ 76. In effect, Reserve Banks operate as bankers' banks to much of the banking industry. They carry out banking functions (many of which echo those that commercial banks provide to end-user customers), including collecting and clearing checks, making advances to commercial entities, and holding reserves for depository institutions. *Lewis v. United States*, 680 F.2d 1239, 1241 (9th Cir. 1982) (describing operations of the Reserve Banks).

---

[1] The well-pled factual allegations from the Complaint are accepted as true solely for purposes of this Motion. *Witzke v. Idaho State Bar*, No. 1:22-cv-00090-REP, 2022 U.S. Dist. LEXIS 217217, at *15 (D. Idaho Nov. 29, 2022) (Patricco, J.).

**B.      Master Accounts**

A master account is a deposit account that permits a depository institution to make deposits into and withdrawals from an account held at and administered by its regional Reserve Bank.[2]  The Reserve Bank holding the account manages the credit risk posed by the institution's use of Federal Reserve services.  *Id.*  A Reserve Bank account holder's deposits—as recorded in a master account—sit on the Federal Reserve's balance sheet as liabilities.[3]

As federally chartered corporations, the scope of services that Reserve Banks may offer are defined by 12 U.S.C § 341 *et seq.*  Relevant here, 12 U.S.C. § 342 permits Reserve Banks to open deposit accounts (such as master accounts) and provides that "[a]ny Federal reserve bank may receive from any of its member banks, or other depository institutions . . . deposits of current funds in lawful money. . . ."  Originally, deposit accounts with Reserve Banks were limited to the U.S. government and the Federal Reserve "member" banks.[4]  In 1980, Congress passed the Monetary Control Act of 1980, Pub. L. No. 96-221, to give Reserve Banks the option to offer services and accounts to eligible nonmember depository institutions.  *See* 12 U.S.C. § 342.

**C.      The Board's August 2022 Guidelines for Evaluating Account and Service Requests**

In light of the rapidly changing landscape of novel state charters and increased efforts to obtain direct access to the Federal Reserve Systems, the Board enacted "Guidelines for Evaluating Account and Services Requests" ("Guidelines"), which became effective on August 19, 2022, after two rounds of notice-and-comment.  87 Fed. Reg. 51,099; Compl. ¶ 78.  The Guidelines set forth six principles for Reserve Banks to use in evaluating access requests.  87 Fed. Reg. at 51,106-109.

---

[2] Reserve Maintenance Manual, FederalReserve.gov (Nov. 19, 2018), https://bit.ly/3QnjMUl.

[3] *See* Monetary Policy, Credit and Liquidity Programs and the Balance Sheet, FederalReserve.gov (Nov. 15, 2021), https://bit.ly/3dnokva.

[4] Member banks are subject to supervision by the Board and are required to hold stock in their regional Reserve Bank.  *Am. Bankers Ass'n*, 932 F.3d at 1379.

They established a three-tiered review framework "to serve as a guide to the level of due diligence and scrutiny to be applied by Reserve Banks to different types of institutions," with "institutions in a higher tier [] on average fac[ing] greater due diligence and scrutiny." *Id.* at 51,109. The three tiers are: "Tier 1: Eligible institutions that are federally insured"; "Tier 2: Eligible institutions that are not federally insured but are subject (by statute) to prudential supervision by a federal banking agency"; and "Tier 3: Eligible institutions that are not federally insured and are not considered in Tier 2." *Id.* at 51,109-10. The Guidelines state that "a Reserve Bank has the authority to grant or deny an access request by an institution in any of the three proposed tiers . . . on a case-by-case, risk-focused basis[.]" *Id.* at 51,109.

### D.    PayServices' Master Account Request

PayServices is an exclusively online bank, "operates no physical branches," and does not carry FDIC insurance. Compl. ¶ 46. Its business model "focuses almost exclusively on facilitating trade of commodities for the small to medium enterprises from and to the United States." *Id.* ¶ 44. *See also* Exhibit A to the Declaration of Meredith Karp in Support of Defendant's Motion to Dismiss ("Ex. A").[5] On August 3, 2022, PayServices—whose founder resides in Florida—received preliminary approval to establish a state-chartered bank in Idaho. Compl. ¶¶ 3; 40. On August 10, 2022, PayServices requested a master account from FRBSF. *Id.* ¶ 23. On May 31, 2023, FRBSF denied PayServices' request because it did "not meet the standards outlined in the [Guidelines]." Ex. A; *see also* Compl. ¶ 85. In its denial letter, FRBSF found that PayServices' "novel, monoline

---

[5] FRBSF's decision denying PayServices' request is incorporated by reference into the Complaint because it forms the basis of Plaintiff's Complaint and because Plaintiff refers extensively to the letter. *See* Compl. ¶¶ 36; 43; 50; 85. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("a document . . . may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."). Because the denial letter is incorporated by reference, the Court may treat it "as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss." *Id.*; *Accord N. Mgmt. Servs. v. Navigators Specialty Ins. Co.,* 608 F. Supp. 3d 996, 999 n.2 (D. Idaho 2022).

business model and focus on transactions that are largely foreign in nature or involve mostly foreign participants presents undue risks." *Id.* Specifically, FRBSF found that that PayServices' "unproven risk management framework" was insufficient "to mitigate money laundering and terrorism financing risks." *Id.* FRBSF highlighted multiple specific concerns, including "[Bank Secrecy Act, Anti-Money Laundering, and Office of Foreign Assets Control][6] risk management," "the limited banking and bank-specific risk management experience among management," and the possibility that the master account could be used to "fund or facilitate illicit activity." *Id.*

## LEGAL STANDARD

A court may dismiss a lawsuit when the complaint fails to state a claim. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Conclusory allegations, unwarranted deductions of fact, and unreasonable inferences need not be accepted as true." *Witzke*, 2022 U.S. Dist. LEXIS 217217, at *15.

## ARGUMENT

**I.      Each of PayServices' Claims Must Be Dismissed Because FRBSF Had Discretion to Deny PayServices' Request for a Master Account.**

PayServices asserts three claims against FRBSF: (1) an APA claim, (2) a mandamus claim, and (3) a Due Process claim. Each claim alleges that FRBSF is required to provide master accounts to *all* nonmember depository institutions, including PayServices, regardless of the risks presented. *See, e.g.*, Compl. ¶¶ 81; 95; 103. But each claim fails as a matter of law because the plain text of

---

[6] Bank Secrecy Act and Anti-Money Laundering controls serve to "detect and report suspicious activity," including money laundering, terrorist financing, and securities fraud. *See* Anti-Money Laundering, FINRA, bit.ly/3qyzowg (last visited Aug. 13, 2023). In the absence of these controls, the depository institution—and as a result, the Federal Reserve System—could be used to facilitate illicit activity causing significant financial and reputational risk.

Section 342 of the FRA provides FRBSF with discretion to deny master account requests. PayServices' claims rest solely on Section 248a—a price discrimination provision which does not entitle any entity to a master account. In any event, the purpose of the FRA as a whole and the Board's interpretation of the FRA confirm that FRBSF not only has discretion to deny master accounts, but also has an obligation to deny accounts that pose a risk to the Federal Reserve System.

### A.    Count I (APA Claim) Fails Because Discretionary Action Is Not Reviewable.

PayServices brings a claim under the APA alleging that FRBSF's denial of its application was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" because FRBSF purportedly "has a non-discretionary duty to make available [to PayServices] Federal Reserve bank services through master accounts." Compl. ¶¶ 81; 84. Count I must be dismissed because FRBSF had discretion to deny PayServices' request for a master account, and this Court lacks jurisdiction under the APA to review discretionary actions.

Under the APA, courts can "set aside final agency[7] action that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Int'l Bhd. of Teamsters v. United States DOT*, 861 F.3d 944, 951-52 (9th Cir. 2017) (quoting 5 U.S.C. § 706(2)(a)). However, not all agency actions are reviewable under the APA. The APA expressly precludes review of "agency action," which is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). As the Ninth Circuit has held, it is "well-settled that the touchstone of reviewability under [the APA] is whether there's 'law to apply.'" *Or. Nat. Res. Council v. Thomas*, 92 F.3d 792, 798-99 (9th Cir. 1996) (holding that "where there is no law to apply for purposes of [the APA], it is legally irrelevant whether an agency has made a 'finding' that is 'contrary to the evidence before it' or that's 'so implausible that it couldn't be ascribed to a difference in view or the product of agency expertise.'").

---

[7] As a threshold matter, FRBSF is not an "agency" and thus not subject to the APA. *See infra* Section II.

Thus, courts have no jurisdiction to review agency action under the APA when "[a] statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Int'l Bhd. of Teamsters*, 861 F.3d at 954.

Here, the review of master accounts is plainly committed to FRBSF's discretion. As a result, PayServices' APA claim must be dismissed.

## 1.    The FRA Provides FRBSF with Discretion to Deny Master Accounts.

PayServices' APA claim fails because FRBSF has discretion to deny a master account under the FRA. Master accounts are governed by Section 342, which empowers, but does not require, Reserve Banks to open such accounts. Section 342 provides that a Reserve Bank "*may* receive from any of its member banks, or other depository institutions, . . . deposits . . ." 12 U.S.C. § 342 (emphasis added). "'[M]ay' does not just suggest discretion, 'it *clearly* connotes it.'" *Biden v. Texas*, 142 S. Ct. 2528, 2541 (2022) (citation omitted) (emphasis in original); *Opati v. Republic of Sudan*, 140 S. Ct. 1601, 1604 (2020) (same); *Meritage Homes of Nev., Inc. v. FDIC*, 753 F.3d 819, 826 (9th Cir. 2014) ("'may,' when used in a statute, usually implies some degree of discretion").

Reserve Banks' discretion to receive deposits includes the discretion to decline to receive deposits from an institution. Indeed, the Supreme Court's long-standing precedent establishes that Section 342 does not "impose[] upon reserve banks any obligation to receive" deposits; it merely "confers authority to do so." *Farmers & Merchs. Bank v. Fed. Rsrv. Bank of Richmond*, 262 U.S. 649, 662 (1923) (noting that although Section 342 had been amended multiple times, "in each amendment . . . the words used were 'may receive'—words of authorization merely"). Indeed, when Congress amended Section 342 in the Monetary Control Act, it did not alter the permissive "may" language. 94 Stat. 132, 139. Congress can therefore be presumed to have "accepted and ratified" the Supreme Court's reading of "may receive" in Section 13 as discretionary in nature. *Texas Dep't*

*of Hous. and Cmty. Affairs v. Inclusive Communities Project*, 135 S. Ct. 2507, 2520 (2015); *see also Forest Grove School Dist. v. T.A.*, 557 U.S. 230, 244 n.11 (2009) ("When Congress amended [the Act] without altering the text [of the relevant provision], it implicitly adopted [the Supreme Court's] construction of the statute."). Thus, while Reserve Banks have the authority to accept deposits—and therefore, to grant accounts to depository institutions—the FRA does not require them to do so.

### 2. Section 248a Does Not Entitle PayServices to a Master Account.

Throughout its Complaint, PayServices contends that 12 U.S.C. § 248a requires FRBSF to grant it a master account. *See* Compl. ¶¶ 81; 103. But Section 248a is irrelevant here. The plain text of Section 248a neither entitles PayServices to a master account nor imposes any duties on Reserve Banks. Instead, Section 248a instructs the Board (not FRBSF) to guarantee that the Federal Reserve System does not price discriminate between member and nonmember banks. Nothing in this price discrimination provision prevents Reserve Banks from denying an institution's request for a master account.[8]

First, Section 248a does not require FRBSF to grant every master account request. Section 248a, titled "Pricing of services," provides that "the Board shall publish for public comment a set of pricing principles . . . for Federal Reserve bank services to depository institutions" and instructs the Board "to put into effect a schedule of fees for such services which is based on those principles." 12 U.S.C. § 248a(a). Once the Board has established a fee schedule, "[a]ll Federal Reserve bank services

---

[8] FRBSF is aware that the District Court for the District of Wyoming recently denied a motion to dismiss a complaint alleging the improper denial of a master account. *See Custodia v. Federal Reserve Bd. Of Govs.*, No. 1:22-cv-00125, Doc. 164 (D. Wy. June 8, 2023). However, *Custodia* did not hold that Section 248a applied to Reserve Banks as a matter of law. Instead, the decision was "based mostly" on one opinion in a three-way split decision of the Tenth Circuit, *id.* at 10-12 (citing *Fourth Corner Credit Union v. Fed. Rsrv. Bank of Kansas City*, 861 F.3d 1052, 1053-54 (10th Cir. 2017)), which the *Custodia* court found "may plausibly be the law on this matter in this case" at the motion to dismiss stage. *Id.* at 10. The Court expressly deferred on questions of statutory interpretation. *Id.*

covered by the fee schedule shall be priced explicitly," *id.* § 248a(c)(1) and "[a]ll Federal Reserve bank services covered by the fee schedule shall be available to nonmember depository institutions and such services shall be priced at the same fee schedule applicable to member banks." *Id.* § 248a(c)(2).   In effect, Section 248a is an anti-price discrimination provision.   It provides that a nonmember bank which has access to the Federal Reserve System will pay the same for those services as a member bank.   But Section 248a says nothing about whether a depository institution is entitled to a master account in the first instance, nor does it *entitle* any institution to a master account.

Second, Section 248a does not impose any duty on Reserve Banks at all.   This provision— contained in subchapter of the FRA titled "Board of Governors of the Federal System"—applies only to the Board.   *Compare* 12 U.S.C. §§ 241-52 *with* 12 U.S.C. §§ 341-64 (subchapter titled "Powers and Duties of Federal Reserve Banks").   *See Bobka v. Toyota Motor Credit Corp.*, 968 F.3d 946, 954 (9th Cir. 2020) ("[T]he title of a statute or section can aid in resolving an ambiguity in the legislation's text.").   It directs the Board, not the Reserve Banks, to take certain actions.   *See* § 248a(a) ("the *Board* shall publish for public comment a set of pricing principles"); *id.* § 248a(d) ("The *Board* shall require reductions in the operating budgets of the Federal Reserve banks").   It would be anomalous for Congress to hide a requirement that Reserve Banks must grant direct master accounts to all depository institutions, irrespective of risk presented, in a provision that is not even addressed to the Reserve Banks.   *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) (courts should interpret statutes with a recognition that Congress does not "hide elephants in mouseholes").

In all, Section 248a—the only statutory provision on which PayServices relies—is inapplicable on its face.   As a result, PayServices' APA claim must be dismissed.

### 3.    The Statutory Scheme Entrusts FRBSF with Discretion.

PayServices' position—that every eligible depository institution holding any state charter is automatically entitled to a master account, regardless of its risk profile (Compl. ¶¶ 60-64; 95-96)—

puts each individual state or territory in control of direct access to the national payment system without room for Reserve Bank review.  But stripping Reserve Banks of their power (and duty) to manage risk is inconsistent with the very purpose of the FRA.

Construing Section 248a as granting an unconditional right of access to Reserve Bank master accounts would undermine the purpose of the FRA, in derogation of basic principles of statutory construction.  *See King v. Burwell*, 576 U.S. 473, 492 (2015) (statutes should be construed in light of the "remainder of the statutory scheme [to favor readings with] a substantive effect that is compatible with the rest of the law.").  First, Congress charged the Federal Reserve System with oversight of the nation's payment system "in furtherance of the national fiscal policy."  *See Fed. Rsrv. Bank of Boston v. Comm'r of Corps. & Tax'n*, 499 F.2d 60, 62 (1st Cir. 1974).  Permitting every single state and territory to dictate which entities can directly access the Federal Reserve System—with *no* room for federal oversight—would remove a vital tool for the Reserve Banks to guard against money laundering, contain cybersecurity breaches, or address a myriad of other risks. Second, the purpose of the Monetary Control Act, in which Section 248a was first enacted, is to "facilitate the implementation of monetary policy," 94 Stat. 132.  PayServices' construction of Section 248a would undermine the Federal Reserve System's ability to carry out its statutory mandate to regulate the money supply to promote maximum stability.  In all, nothing in the text or history of the FRA suggests that Congress intended to substitute the judgment of an individual state for that of the Federal Reserve System to maintain the "stability of financial systems and markets." *Bloomberg L.P. v. Bd. of Governors of the Fed. Res. Sys.*, 649 F. Supp. 2d 262, 265 (S.D.N.Y. 2009).

Further, Congress recently confirmed that Reserve Banks can deny requests for master accounts.  In December 2022, Congress amended the FRA to require the Board to "create and maintain a public, online, and searchable database" that includes "a list of every entity that submits an access request for a reserve bank master account and services . . . including whether . . . a request

was approved, *rejected*, pending, or withdrawn." 12 U.S.C. § 248c(b)(1) (emphasis added).  The statute indicates that each entry on the list must specify whether the requesting entity was "an insured depository institution," "an insured credit union," or a "depository institution that is not an insured depository institution."  *Id.* § 248c(b)(1)(C).  Thus, by its plain terms, Congress specifically contemplated that requests for master accounts from uninsured depository institutions (such as PayServices here) may be "rejected."  It strains credulity to assume that Congress mandated the Federal Reserve System to track all rejected applications for master accounts if the Reserve Banks had no discretion to reject master accounts in the first place.

### 4.    The Board Confirms that FRBSF Has Discretion.

The Board—the agency in charge of overseeing the Federal Reserve System—promulgated guidelines confirming that Reserve Banks have discretion to deny master accounts.  It is beyond dispute that an agency usually receives "deference in its construction of an ambiguous statute that it administers."  *Int'l Bhd. of Teamsters, Local 2785 v. Fed. Motor Carrier Safety Admin*., 986 F.3d 841, 849 (9th Cir. 2021); *Ocean, Inc. v. Pritzker*, 24 F. Supp. 3d 49, 70 (D.D.C. 2014) (holding that agency guidance published through a "formal process" deserves "considerable deference").  Here, the Guidelines repeatedly recognize that "decisions regarding individual access requests remain at the discretion of the individual Reserve Banks."  87 Fed. Reg. 51,106; *id.* at 51,100 (noting the "discretion granted to the Reserve Banks under the Federal Reserve Act to grant or deny access Requests").  This Court should defer to the Board's reasonable interpretation of the FRA.

In fact, not only do the Guidelines permit FRBSF to exercise discretion, they require the Reserve Banks to ensure that the institution requesting an account does not present undue risk to the Federal Reserve System.  The Guidelines "apply to requests *from all institutions* that are legally eligible to receive an account."  87 Fed. Reg. 51,106 (emphasis added).  And on at least 12 separate occasions, the Guidelines state that Reserve Banks "should confirm" or "should consider" various

factors in evaluating requests for Master Accounts, which underscores the Reserve Banks' use of discretion when making decisions. *Id.* at 51,107-10.

*     *     *

In all, Section 342—the only relevant provision of the FRA—clearly provides FRBSF with discretion to deny master accounts, and Section 248a, the sole statutory provision on which PayServices relies to establish FRBSF's "non-discretionary" duty is inapplicable on its face. Moreover, the purpose of the FRA, Congress's recent amendment to the FRA, and the Board's interpretation of the FRA each independently confirm that FRBSF has discretion to deny master account requests. And because this Court has no jurisdiction under the APA to review actions committed to FRBSF's discretion, PayServices' APA claim fails as a matter of law.

### B.     Count II (Mandamus Claim) Fails Because Mandamus Cannot Be Used to Compel Discretionary Action.

PayServices brings a claim for relief under the Mandamus Act, requesting this Court to direct FRBSF to "rescind denial of PayServices' master account application and instead grant the application." Compl. ¶ 92. PayServices is not entitled to the "extraordinary remedy" of a writ of mandamus, *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994), because a writ of mandamus cannot be granted to compel discretionary action.

"[M]andamus is traditionally proper only to command an official to perform an act which is a positive command and so plainly prescribed as to be free from doubt." *Shoshone Bannock Tribes of the Fort Hall Rsrv. v. United States*, 575 F. Supp. 3d 1245, 1260 (D. Idaho 2021) (quoting *Smith v. Grimm*, 534 F.2d 1346, 1352 (9th Cir. 1976)). Critically, "mandamus may not be used to impinge upon an official's legitimate use of discretion." *Barron*, 13 F.3d at 1376. Here, PayServices seeks to do just that. The Complaint contends that "[m]andamus is appropriate here because PayServices has a clear and certain claim to have its master account application granted." Compl. ¶ 95.

PayServices contends that its "valid Idaho bank charter" entitles it to a master account.  *Id.* ¶ 95-96. But the FRA puts the Board and Reserve Banks—not individual states or territories—in charge of monitoring the Federal Reserve System.  *See supra* Section I.A.4.  The only other provision PayServices cites to support its "clear and certain" claim is Section 248a.  Compl. ¶ 95.  But Section 248a is inapplicable, and instead, Section 342 grants FRBSF discretion to deny such accounts.  *See* Section I.A.1-4.  Because mandamus is improper where, as here, a defendant is afforded statutory discretion, Count II must be dismissed.

### C. Count III (Due Process Claim) Fails Because PayServices Has No Protected Property Interest in a Discretionary Benefit.

PayServices brings a Due Process claim, alleging that "FRBSF has deprived PayServices of a protectible property interest – namely, access to a Federal Reserve master account."  Compl. ¶ 101. Count III fails because PayServices has no protected property interest in a master account that FRBSF has discretion to deny.

To state a procedural Due Process claim, a plaintiff must allege the deprivation of a protected property interest.  *Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 716 (9th Cir. 2011).  As this Court has held, "if government officials have the discretion to grant or deny a benefit, that benefit is not a protected property interest."  *MH v. Jeppesen*, No. 1:22-cv-00409-REP, 2023 U.S. Dist. LEXIS 108023, at *43 (D. Idaho June 20, 2023) (Patricco, J.); *see also Doyle v. City of Medford*, 606 F.3d 667, 672 (9th Cir. 2010) ("A regulation granting broad discretion to a decision-maker does not create a property interest.").  For this reason, the Ninth Circuit has dismissed Due Process claims against federally chartered banks (like FRBSF) where the relevant statute does "not impose particularized standards or criteria that significantly constrain the Bank's discretion to deny" the benefit.  *Fid. Fin. Corp. v. Fed. Home Loan Bank*, 792 F.2d 1432, 1436 (9th Cir. 1986).

The only "property" interest PayServices identifies is "access to a Federal Reserve master account." Compl. ¶ 101.  Here, again, PayServices' only support for this proposition is that "Section 248a requires the issuance of master accounts." *Id.* ¶ 103.  For the same reasons stated above, that is not true: FRBSF has discretion to deny master accounts. *See supra* Section I.A.1-4.  And because FRBSF has discretion, PayServices has no protected property interest in a master account, and PayServices' Due Process claim must be dismissed.[9]

## II.   Each of PayServices' Claims Fails Because FRBSF Is Not the Federal Government.

Each of PayServices' claims fails for the independent reason that FRBSF is not a federal agency or branch of the government, as required to state each of its claims.

*First*, the Reserve Banks are not "agencies" under the APA and, as such, this Court lacks subject matter jurisdiction over Count I.  *Walkwell Int'l Labs., Inc. v. Nordian Admin. Servs., LLC*, No. 1:13-cv-0199-EJL, 2014 U.S. Dist. LEXIS 5282, at *17-18 (D. Idaho Jan. 13, 2014) (dismissing APA claim against federal contractor for lack of jurisdiction). The APA defines "agency" as an "authority of the Government of the United States." 5 U.S.C. § 701(b)(1).  Courts have cautioned that "[t]he wording of section 701(b)(1) indicates that we should not give the definition of 'agency' a more expansive reading" than what is present in the text. *New York v. Atl. States Marine Fisheries Comm'n,* 609 F.3d 524,532 (2d Cir. 2010).  To qualify as an agency, an entity must "exercise substantial independent authority" or be the "center of gravity in the exercise of administrative power." *Dong v. Smathers Inst.*, 125 F.3d 877, 881-82 (D.C. Cir. 1997).

---

[9] PayServices makes passing reference to "Exim Bank," Compl. ¶¶ 50-51, and "a dozen banks chartered under the Idaho Bank Act." *Id.* ¶ 72.  Although PayServices does not allege that FRBSF provided a master account to Exim Bank, PayServices alleges that FRBSF provided master accounts to the other Idaho chartered banks.  To the extent PayServices contends that FRBSF's decision to grant these institutions a master account creates a "property interest," PayServices is mistaken.  "A constitutional entitlement cannot be created . . . merely because a wholly and *expressly* discretionary state privilege has been granted generously in the past." *Burch v. Smathers*, 990 F. Supp. 2d 1063, 1072 (D. Idaho 2014) (quoting *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981).

Here, PayServices alleges that the FRBSF operates under the "ultimate control of the Federal Reserve Board of Governors, an independent federal regulatory agency."  Compl. ¶ 76.  Still, PayServices alleges that FRBSF is an agency because the "Board has delegated substantial decision making authority to the Federal Reserve banks" and by virtue of that delegated authority, "FRBSF possesses substantial independent authority in the exercise of specific functions and has authority in law to make decisions."  *Id.* ¶ 80.  But the only "decision-making" authority alleged in the Complaint is the ability to process a master account review (*id.* ¶ 81)—which PayServices alleges is a "non-discretionary" duty, not a decision-making function.

In any event, FRBSF's ability to decide whether to grant an eligible financial institution a master account does not make FRBSF the "center of gravity in the exercise of administrative power" under the APA.[10]  *Dong*, 125 F.3d at 881-82 (holding that defendant's decision-making authority did not render it a government agency); *Nordian*, 2014 U.S. Dist. LEXIS 5282, at *17-18 (same).

Indeed, Reserve Banks have none of the traditional hallmarks of a federal agency: they cannot "promulgate regulations having the force and effect of law," *Scott v. FRB of Kan. City*, 406 F.3d 532, 536 (8th Cir. 2005); 12 U.S.C. § 248(k) (prohibiting the Board from delegating "rulemaking" to the Reserve Banks); they "receive no appropriated funds from Congress," *Lewis*, 680 F.2d at 1242; and the government appoints only a minority of their directors, 12 U.S.C. §§ 302; 304.  In fact, "Congress has considered the status of the [Reserve Banks] on multiple occasions and decided not to convert them formally into government agencies."  *United States ex rel. Kraus v. Wells Fargo & Co.*, 943 F.3d 588, 598 (2d Cir. 2019) (holding that Reserve Banks are not agencies under the False Claims Act).  Because FRBSF is not a federal agency, Count I must be dismissed.

---

[10] The Ninth Circuit has held that Reserve Banks are not federal agencies under the Federal Torts Claims Act.  *Lewis*, 680 F.2d at 1241.  And the Federal Torts Claims Act defines agency more broadly than the APA.  *See Dong*, 125 F.3d at 878-80.

*Second,* PayServices is similarly not entitled to a writ of mandamus.  The Mandamus Act, 28 U.S.C. § 1361, grants district courts the authority to issue a writ of mandamus compelling an "officer" or "employee" of the United States or "any agency thereof to perform a duty owed to the plaintiff."  PayServices alleges that mandamus is proper because "FRBSF's president is 'an officer . . . of the United States."  Compl. ¶ 94.   But the "federal reserve banks . . . are not departments of the government," *Emergency Fleet Corp.*, 275 U.S. at 426, and as discussed above, they are not federal agencies.  *See also Scott*, 406 F.3d at 537 ("no statute designates Federal Reserve Banks as federal agencies").  As a result, Count II must be dismissed.

*Third,* PayServices' Due Process claim must similarly be dismissed because the Due Process clause applies "only to the federal government."  *Am. Bankers Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 75 F.3d 1401, 1406 (9th Cir. 1996).  Whether a federally chartered corporation is the "federal government" for purposes of the Due Process clause depends on two factors: (1) "the extent to which its objectives are governmental," and (2) "the extent to which the government directs and controls the corporation's pursuit of those objectives."  *Id.*  The control prong is not satisfied where, as here, the government does "not control[] the operation of [the federal corporation] through its appointees."  *Id.* at 1407 (citing *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374 (1995)).

The Ninth Circuit's decision in *American Bankers* is instructive here.  The Ninth Circuit held that the Federal Home Loan Mortgage Corporation—which, like FRBSF, is a federally chartered corporation subject to supervision by a federal agency—was not the federal government for purposes of the Due Process clause because the U.S. government appointed a minority of its board of directors.  *Id.*  Here, too, the government only appoints one-third of the FRBSF Board of Directors.  12 U.S.C. §§ 302; 304.  As a result, FRBSF is not the federal government, and PayServices' Due Process claim must be dismissed.  *See Hall v. Am. Nat'l Red Cross*,86 F.3d 919, 922 (9th Cir. 1996) (holding that the Red Cross, although a federal instrumentality for some

purposes, was not a "government actor" because "the government has not retained permanent authority to appoint the majority of the Red Cross governing board").

### III.    Count I (APA Claim) Must Also Be Dismissed Because FRBSF's Decision Was Not Arbitrary or Capricious.

PayServices' APA claim also fails because PayServices has not pled facts showing that FRBSF's decision was arbitrary or capricious. Compl. ¶ 84. Under the APA, a court can set aside agency action that is arbitrary or capricious. Review under "the arbitrary and capricious standard is narrow, and the reviewing court may not substitute its judgment for that of the agency." *United States v. Snoring Relief Labs., Inc.*, 210 F.3d 1081, 1085 (9th Cir. 2000) (citations omitted). "A decision is arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or product of agency expertise." *O'Keeffe's, Inc. v. U.S. Consumer Prod. Safety Comm'n*, 92 F.3d 940, 942 (9th Cir. 1996) (citations omitted). PayServices here fails to meet this exacting standard. As a threshold matter, PayServices expressly pleads that FRBSF based its denial of PayServices' application on the Guidelines. Compl. ¶ 85. A "plaintiff has no right to sue for a violation of the APA in the absence of a relevant statute whose violation forms the legal basis for the complaint." *Nordian*, 2014 U.S. Dist. LEXIS 5282, at *18. And here, PayServices has not alleged that FRBSF violated any relevant standard, except for Section 248a which, as stated above, does not apply here. As a result, its APA claim must be dismissed.

In any event, PayServices does not plead facts showing that FRBSF's decision was inconsistent with the Guidelines—the only possibly relevant standard by which to judge FRBSF's discretion. First, PayServices does not allege that FRBSF improperly categorized it as a Tier 3 entity. Nor could it: a Tier 3 entity is any entity that is not federally insured and is not subject to

prudential supervision by a federal regulator.  87 Fed. Reg. 51,109-110.  PayServices does not allege

that it is subject to federal supervision and concedes it is not insured.  Compl. ¶¶ 17-18.

Second, PayServices appears to allege that FRBSF made the wrong decision because

PayServices' business model posed no risk to the Federal Reserve System, *see id.* ¶¶ 27-31, 34-39, and

because its current business plan projections make up only a fraction of the total Federal Reserve

balance sheet, *see id.* ¶ 58.  But a Court cannot overturn FRBSF's decision under the APA merely

because PayServices disagrees with the result.  To the contrary, this Court "*must uphold agency*

*decisions* so long as the agencies have 'considered the relevant factors and articulated a rational

connection between the factors found and the choices made.'"  *City of Sausalito v. O'Neill*, 386 F.3d

1186, 1206 (9th Cir. 2004) (emphasis added).

Here, FRBSF's denial letter applies the factors laid out in the Guidelines.  Ex. A.  For example,

the Guidelines instruct FRBSF to assess whether an institution "present[s] or create[s] undue credit,

operational, settlement, cyber, or other risks to the" Reserve Banks, or whether an institution may

"facilitate . . . illicit activity."  87 Fed. Reg. at 51,107.  To guide this assessment, the Reserve Banks

were instructed to "confirm that the institution has an effective risk management framework."  *Id.*

Consistent with that guidance, FRBSF denied PayServices' application[11] because PayServices'

"unproven risk management framework" was insufficient "to mitigate money laundering and terrorism

financing risks."  Ex. A.  FRBSF specifically cited inadequate controls in "[Bank Secrecy Act, Anti-

Money Laundering, and Office of Foreign Assets Control] risk management," "cyber and information

security risk management," and "enterprise risk management," along with "the limited banking and

bank-specific risk management experience among management[.]"  *Id.*

---

[11] Plaintiff also alleges that FRBSF "never presented any specific barriers to approval prior to the
issuance of a denial."  Compl. ¶ 83.  But the APA does not require FRBSF to provide explanations
"prior" to issuing a denial.

DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 19

In sum, Plaintiff's APA claim also fails as a matter of law because it cannot show that FRBSF's decision to deny PayServices' master account request was arbitrary or capricious.

## IV. Count III (Due Process) Must Be Dismissed for the Independent Reason that PayServices Has Not Alleged that It Was Denied Procedural Protections.

PayServices' procedural Due Process claim also fails because PayServices received all the procedural protections required by law.[12]   A procedural Due Process claim requires "(1) a protect[ed] liberty or property interest . . . and (2) a denial of adequate procedural protections." *Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 716 (9th Cir. 2011) (citations omitted).

Even if a master account was a protected property interest (which, for the reasons discussed above, it is not), "[a]ll that is required before a deprivation of a protected interest is 'notice and opportunity for hearing *appropriate* to the nature of the case.'" *Pinnacle*, 648 F.3d at 717.  Here, PayServices expressly pleads that it received two opportunities to meet with FRBSF.  Compl. ¶¶ 16; 23.  It admits that it was permitted to submit written evidence.  *Id.* ¶¶ 24; 25.  And it admits that it received a written decision explaining the basis for FRBSF's decision.  *Id.*  ¶ 43.  On this record, PayServices has not been denied any procedural protections, and its Due Process claim must be dismissed.  *Pinnacle*, 648 F.3d at 717 (dismissing Due Process claim when plaintiff "had ample opportunities to submit evidence both before and after the Notice was revoked" and the state actor "explained its decision . . . even if no formal administrative hearings took place").

## CONCLUSION

For the foregoing reasons, Defendant FRBSF respectfully requests this Court to dismiss PayServices' Complaint with prejudice.

---

[12] Plaintiff in passing references a substantive Due Process claim.  *See* Compl. ¶ 100. "Substantive due process protects an individual's fundamental rights."  *C.R. v. Eugene Sch. Dist.*, 835 F.3d 1142, 1154 (9th Cir. 2016).  But PayServices does not have a fundamental right to directly access the Federal Reserve System, and, in any event, PayServices concedes that it still can access the Federal Reserve System through an intermediary bank.  Compl. ¶¶ 1; 98.

Dated this 14th day of August, 2023.

*Respectfully submitted,*

HOLLAND & HART LLP

By:  /s/ Robert A. Faucher
      Robert A. Faucher

    *- and -*

SIMPSON THACHER & BARTLETT LLP

By:  /s/ Jonathan K. Youngwood
      Jonathan K. Youngwood (*Admitted Pro Hac Vice*)
      Meredith Karp (*Admitted Pro Hac Vice*)

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 14th day of August, 2023, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

      Asa Daniel Brown
      asa@asabrownlaw.com

      Jade A. Craig
      jade@jadeacraigpa.com

       /s/ Robert A. Faucher
      Robert A. Faucher
      of HOLLAND & HART LLP